With that, we'll ask the clerk to call the first case for us, and will the attorneys for both parties step up and identify yourselves for the record. Case number 10-527, People v. Robert Jones. Shawn Collins-Stapleton on behalf of Appellant Robert Jones. Assistant State's Attorney Whitney Bond on behalf of the people of the state of Illinois. Thank you. Counsel, whenever you're ready, you may proceed. Good morning, and please, the court. I'd like to focus on the Ostfeld claim and the Krenkel claim. And, of course, this court has questions about the suggested identification claim. I'd be happy to answer that as well. This court should vacate Robert Jones's enhanced 45-year sentence for armed robbery with a firearm, because under Ostfeld v. Clemens, it is in violation of the proportionate penalty clause. Now, this has been, of course, a very dynamic area of the law, and so if you don't mind, I'd like to... was withdrawn, and then, evidently, it was reinstated in House Child as having life under the identical elements test, which Clemens does appear to reaffirm with the same dissent by Justice Kilbride in both of those cases. And there's a bit of a wrinkle in this case. The dissent being focusing on the fact that there's no reason to invalidate the entire statute if it's only the sentencing provision that has to be adjusted. But that also seemingly clarifies that the majority meant to avoid the entire statute. I think that's correct. What's the wrinkle you were going to tell us about? Well, the wrinkle here is that the defense was committed before House Child, and then, of course, he was ultimately convicted and sentenced post-House Child and also post the so-called fix-it statute that allegedly cured the proportionate penalty clause violation identified in House Child. Since you cannot, well, there are really two approaches to the fix-it statute. One of them is a separation of powers kind of argument, isn't it, that the Senate or the legislature cannot step in and obviate a ruling of the Supreme Court by adjusting a provision that would render its ruling as no longer having the same rationale? That's correct. In addition, in this case, because the fix-it statute could not, under ex post facto principles, impose a more lengthy sentence on Jones, who was offensive, had been committed in 2004 before the reenactment of armed robbery of the firearm. Now, you added the Clemens case at the last minute, so the state did not really have a formal opportunity to write any rebuttal to it, but presumably they will now have that opportunity, at least during oral argument. Is that satisfactory to the state? Do you have anything further? If there are no more questions on that, I'd like to move on to the wrinkle claim briefly. Sure. And if this Court is remanding for resentencing, I'd like the Court to also consider remanding for the appointment of counsel and a new crankle hearing, because the trial court, in this case, did not resolve Jones's ineffective assistance of counsel claim. That is, the counsel had failed to investigate that he was bald at the time of defense. That was exculpatory evidence that was critical of the state. The state contends that the prime objective of the defense involving the haircut testimony was that he never had hair. And consequently, the showing of the earlier photo that he did have hair took care of that, at least was substantial rebuttal to the defense's position. And the state argues that that barbershop was a potential toxic source for this case, because they could just as easily have rebutted his alibi as affirmed it. And consequently, it was a matter of tactics, of strategy, for which a defense counsel, unless terribly off base, for which his conduct is condoned. Well, Jones's claim was that he didn't have hair at the time of the offense. And that was critical, because both of the witnesses, within hours after the defense, said that the gunman had a low-fade haircut. Now, if any of you thought that I had a low-fade haircut, I think you would probably think that that person had misidentified me. But on the other hand, notwithstanding the very interesting New Jersey case, which you've cited and which I had the occasion to read before, that case does not purport to nullify eyewitness testimony, and even where it's under stress, as in this case. As a matter of fact, there have been earlier studies, as I recall, which would seem to indicate that memorization is enhanced by stress, so that the old masters in the British public schools have carried on in some areas of our culture, I suppose even to this present day, of wrapping a kid on the knuckles when he forgets, helps him remember in actuality. It may not be worth the price, but stress is actually a memory enhancer, rather than a memory reducer. And as such, the fact that these two women had ample time to see this man as he was standing over them and as he came in with the gun, would be considered very substantial proof. Well, I would suggest the New Jersey Supreme Court, in evaluating the relevant documentation, the metadata, which means they looked at data that was collected from a number of studies, showed that stress, and a witness subject to stress or a life threatening situation, that occurrence degrades the witness's ability to accurately identify and recollect the events. And in this case, of course, two men barged into this nail salon. The witnesses were in pedicure chairs. They were ordered out of the chairs. They were ordered to lay prone on the floor. And so they are observing the events from a matter of inches above the floor. And the accomplice rifles through their- If I'm not mistaken, at least one of those complaining witnesses knew the defendant from prior experience, am I correct? That's not correct, Your Honor. They had never seen him before. And so they are on the floor of this entire, almost this entire event. And when they say, again, that the witness had-I'm sorry, that the gunman had hair, if in fact Jones did not have hair on that day, that would call into question their entire identification. Tom, let me ask you this. Now, the defendant testified at the motion to suppress the lineup and photo identification. Yes. Correct? Did he testify at trial? He did not. Now, this baldness thing, where is that coming in? Who testified or who suggested that he was bald? He did at the Krenkel hearing. Oh, at the Krenkel hearing. Yeah. He said, why didn't my counsel bring in some evidence that I was bald? That would have undercut their identification. But this was never testified to at trial? No. And didn't counsel say at the Krenkel hearing, which you argue was, you know, inadequate, that the lawyer said that the photos he had showing him with a bald head were seven years before the incident? Well, I think that's-the lawyer said- No, without hair. The judge was curious about this claim. The judge knew that there was a question here about why didn't counsel do this and asked counsel, why didn't you do this? And counsel said, I have pictures of him with hair. And Jones says, in 1997. And that was the picture using the array. The photos he had were from 1997, where he had hair. But the defense allegation was that I could never grow hair. Well, I think that what he was saying at that point-he obviously could grow hair in 1997. He's not disputing that. What he's saying is he was bald at the time of the offense. But he's saying it at a hearing after a trial where no one testified or there's no suggestion whatsoever. But that's the whole point is, like, why didn't counsel bring it up? Well, then the trial court determined it was trial strategy. But the court determined it was trial strategy because it was unlikely that there was any way to establish that he was bald at the time of the trial. Well, he could have established it by calling his probation officer or his coworkers. And what happened here was- But the probation officer-how would the probation officer know whether he had hair or not at the time of the- he was on probation at the time for this offense? Yes. Okay. And- If he told-if the defendant told his lawyer that he never had hair and the lawyer procures, even if it's erroneous information, but if that's what he told him, and the lawyer procures a picture, albeit seven years old, that he has hair, wouldn't the lawyer be reasonable in assuming that this defense is a faux defense? Except the lawyer is looking at a client right now who is bald. The likelihood of being successful was outweighed by the fact that he told his lawyer that he was always bald, as opposed-but the lawyer finds out there's pictures where he obviously had hair. Isn't that a strategy choice the lawyer has to make? Yeah. I think that what Jones was saying at his post-trial hearing was that he was bald at the time of the offense. He's not disputing that he had hair- But somebody has to put-that has to be-I mean, at some point, that has to be put- That's why he said, when the lawyer said, I had pictures of him with hair, and Jones says, in 97, and then the court cuts off the inquiry. Okay. And so we never know if counsel saw- At any rate, counsel, we've heard you raise this argument. Now, we've read it in your briefs. If there's something you want to add to what you already have in your briefs, please proceed. If not, I think we can save a lot of time for you for rebuttal. All right. Well, thank you very much. Did you want to say something on the other issue, though? Only if this court asks a question. Okay. All right. Thank you very much. I ask that you vacate Jones's sentence and remand it for a crinkle hearing. Thank you, counsel. Good morning. May it please the court. Again, my name is Whitney Bond. As this court has mandated to follow the Illinois Supreme Court, and the court has decided in two cases now, both Hochschild and Clemens, the people agree with the defendant that his 15-year sentence is unconstitutional and void. With regard to the crinkle issue- Now, does that mean that we can just reduce the sentence, or is a remand appropriate to let the judge rethink the whole sentencing posture, now that we affirm the fact that he does not have the facility of the enhanced? I believe Clemens states that the case must be remanded. Straight up back to the trial court to let the trial court do the resentencing. With regard to the crinkle issue, the key component that we're missing here is adequate inquiry, whether or not the trial court conducted an adequate inquiry into the defense counsel's pro se and effective assistance of counsel claims. An adequate inquiry simply consists of a trial court asking the defendant to explain his position, perhaps letting the trial counsel, his trial counsel, explain his or her position, as well as alternatively the trial court can base its determination on its personal knowledge of what happened at trial or the facial insufficiency of the defendant's allegations. Here what we have is defendant laying down a litany of issues that he had with his trial counsel and trial counsel specifically addressing each and every one of them, including this hair defense, which what the defendant argued to the trial court was that he never had hair. I think he says this is no opinion. It's a proven fact. I never had hair. I can't even grow hair. It's not what he said to the court as much as what he said to his own attorney that would ultimately, I think, be significant. Right. And as his attorney, what she had to do was look and determine whether or not this could possibly be true. Now, what is the source? Did his attorney assert that all that he received from the client by way of information was that he never had hair? The attorney asserted that. Or is that not something that was referenced at the hearing so that we now have to determine whether the defense contention, the defendant's contention, that he merely advised his lawyer that he had no hair at the time of the commission of the crime. And if that was the case, we would have to reevaluate the reasonableness of his lawyer's response in failing to pursue that investigation. Well, I think it's what you can take away from what his trial counsel tells the court, is that this is definitely an issue of trial strategy. Because she has an answer ready and waiting for this defendant's statements. I didn't have hair. And the trial counsel immediately comes back and says, you know what, he's telling me this, but I've seen pictures of him and he does have hair. And as Justice McBride was pointing out, if there were a time that he did have hair and the issue becomes hair and it somehow exonerates him, it still doesn't get him past the fact that these witnesses identified him. The trial court made findings that they had an adequate opportunity to view him, and they testified credibly. Well, let's take apart this assertion that it would be a matter of trial strategy as to whether the attorney would risk an investigation with the probation officer or in the barber shop. Let's ask a very naive question. What risk? Well, the risk is that nobody can prove that he was bald and that everybody can say, no, that's definitely him and he had hair. And essentially that's what happens. They're not going to say that's definitely him because they're not witnesses to the occurrence. They're only witnesses as to whether he had hair. So what does the lawyer have to lose by making an inquiry at the barber shop in the event that the client may actually have been bald? The only possible witnesses that could be there at this very time that this defendant robbed this barber shop as identified by both Camilla and Valeria was perhaps his co-defendant. I mean, there was nobody else there that was with him that could say this defendant was definitely bald. Well, how can we say that? And if that's the case, it's not a matter of trial strategy. It's a matter of trial futility. But on what basis are we to make that assumption that there would be no one there, employees, friends or otherwise, who would be in a position to know whether he was bald as of the period of time during which this occurrence took place? And being bald is not a momentary thing. It's a condition that spans a whole expanse of time. You don't become bald just overnight unless, God forbid, he were on possibly chemical therapies for cancer. Or one shaved their head in honor of St. Baldrick's. There's nothing to say about it. So where does strategy play a part in discouraging this kind of inquiry? Well, I think what we're getting away from is we're getting into whether or not the trial court should have investigated. And that's not what we should be looking at here. It's whether or not the trial court conducted an adequate inquiry, listening to everything the defendant had to say as well as counsel's response, and then also knowing that this claim is facially insufficient because he or she, excuse me, Judge Kipperman, she heard the witnesses at trial. She heard how strong their allegations were that this was the defendant. And she heard them say, no matter what, I wasn't looking at the photo array for those days. How significant would it be if, in fact, the witnesses claimed that he had a full head of hair as they did and he were, in fact, bald? Would that be a material fact? And would that be a game changer? It wouldn't be. It would depend on the witnesses. Didn't the witnesses describe him as having what they called a low fade haircut? Yes. They described, both of them, I believe, described him as a low fade, which. So was that ever really explored? No. There was no. The defense didn't explore it and the state didn't explore it. No, there was no. And the jury wasn't made aware necessarily what everybody thought this term meant. No. Why is it analogous to a failure by defense counsel to investigate an eyewitness, which has been held repeatedly to be an effective assistance of counsel? The significance of being bald as opposed to having hair, isn't it analogous or on par with whatever an eyewitness could have contributed towards an alibi? Isn't it almost as good as an alibi? I think in order to get to that point, you would have to be. . . The trial court would then be tasked with taking what the defendant is stating to them at this pro se post-trial motion. Well, what if the lawyer at that hearing said, I did interview that witness? Then where are we? Then I don't think we would be here. Okay. So if the defendant says there was an eyewitness that my lawyer didn't talk to, and then the lawyer at this crankle hearing says, I did talk to that witness, the question is, did the court adequately inquire? And when the lawyer said that he did this and the defendant said that he didn't do this, then the question is, did the judge conduct an adequate inquiry? In this case, we have a defendant, do we not, who says, I've always been bald. I cannot grow hair. Something like that. Right. And the lawyer says, well, Judge, I have pictures from him seven years ago where he had hair. Right. True? Yes. So the court then determined that, well, the court could have determined from those facts that the lawyer did do some inquiry. Couldn't she? Very well. I mean, and like I said earlier. The question is, did she or did she just, you know, throw it under the rug? Did she do her adequate inquiry or not? Her response to the trial court was, I've seen pictures of him. I believe that she said that she'd spoken with the parole officer. She knew that this idea that what he's bringing forth, that I never could grow hair, she knew that was untrue. So she did take steps forward. What did the parole officer say? I don't want to. I think it was kind of like a cursory sort of discussion. I don't think there was anything that came out that said the parole officer said X, Y, or Z. He obviously didn't have hair at the time of trial or at the time of the clinical hearing. Otherwise, you would have to have been basically psychotic to claim he never had hair when he's walking around with a head of hair. So I think the inference is pretty apparent that he didn't have hair at the time of the clinical hearing. So how far is it to stretch, to extrapolate and say he didn't have hair at the time of the psychotic hearing? So as to emphasize the significance of that investigation. I don't think the hair is as significant as the defendant wants it to be. I think what the issue here, and the trial court even pointed out, there was a photo array that was composed. The witnesses looked at it. Even when this defendant had hair in the picture in the photo array, they still identified him. How soon after the offense did the photo array line up take place? The photo array was approximately five days later, I believe, April 29th. And then the lineups one and two were done May 5th, I believe, 2004. So the fact that he was bald in the picture five days after the offense. He had hair in the picture five days after the offense. Oh, he had hair, excuse me. And he was bald in the lineup. Okay. All right. So he was bald after the offense, which is really the critical date. Was he bald on the date of the offense? And I just want to be clear, though. The photo that was shown that was part of the photo array was a seven-year-old photo. Oh, wait, and that was the one where he had the hair? That was the one where he had the hair. In the lineup, though, he was actually bald. Right, and that was ten days after the actual armed robbery at the salon. And I want to just be very, very clear. I believe the photo array was presented on April 29th of 2004, and then the lineups were conducted on May 25th of 2004. So almost a month had passed between the photo array where the witnesses identified a picture of the defendant with hair and the lineup where they identified him without hair. Well, isn't that proximity in time enough, at least to make one consider, that a reasonable lawyer would have been prompted to investigate? I'm not sure I thought. A reasonable time between the array and... Well, if he doesn't have hair ten days after the occurrence, and he's identified by the eyewitnesses as having hair, wouldn't that, even without prodding from his client, stimulate a reasonable attorney competently performing his services? No, I think... To investigate to see what his condition was... No, I think... At the time of the occurrence. It even strengthens. I think when a trial attorney, his attorney was looking at this information and saying, okay, this picture is seven years old. He has hair. He says he was bald... But he didn't have hair ten days later. What's the ten days later? You're saying that at the time of the lineup, he was bald. Yeah, and the lineup... At the time the crime was committed, he's identified as having hair. Isn't that anomalous in some way? Enough to provoke a conscientious attorney to investigate. No, because what you have is two eyewitnesses who are identifying this defendant both with hair and without hair, because they had an incredible opportunity to view him during the duration of this crime, and to the point where Valerio... Yeah, the question is that, unfortunately, if I might interrupt you, that begs the question. It begs the question because you're using the complaining witnesses as proof that he had hair when that is really the subject of the inquiry. Is it the same person? But a trial court is allowed to look at... When you're making an adequate inquiry for Crankle, it's listening to the defendant, perhaps listening to trial counsel,  to determine the propriety of the trial court's ruling denying defendant's claims. Now, the people contend that based on everything this trial court heard at trial, specifically the identifications where they're identifying him, both with hair and without hair, the fact that he's now coming to say that this hair is a big issue, facially is insufficient. We've been around this block, so we'll have to deliberate on that one. Okay. The people would... If there are no further questions, the people would contend that the trial court's decision here was not manifestly erroneous, and we ask that you affirm the defendant's conditions. Thank you. My notes of record don't reflect the counsel said that she had talked to the probation officer. You all have the record. You might know better than me. I just want to quickly say that when the judge asked defense counsel if she had investigated this, counsel says, I had pictures of him with hair. And Jones said in 97, the court did not then ask counsel if she had any pictures of him with hair around the time of defense. She shut down the inquiry, and that critical question remains unanswered to this day as we're struggling with it. But when you say it remains unanswered, how do you account for the judge presiding over the trial, observing the photographs, the photo spread, and the lineup? And around the time of the trial, 5 and 10 days later, the judge saw pictures in which he had hair, and then the... That's the photo array, right? The photo array is from 90... They're pictures from 1997. It shows him with a low-fade haircut. The lineup photo is more like a month after the offense. And it shows he has no hair. And it shows he's bald. But he has just stood in front of the judge and said, I can't grow hair. I've never been able to grow hair. Did he say that? I think, again, what he was referring to is at the time of the offense. That's what he is focused on. At the time of the offense, he couldn't grow hair? Yes. He was bald at the time of the offense. Oh, okay. All right. That's what I think he is saying. Now, are they able to tell from the photographs whether the baldness is natural or whether it is the result of giving himself, shaving his scalp? It's hard to say from the photograph. But, again, that's why you could have brought in someone who had seen him up close around that time to say that, no, this man is bald. How much time did it last between the lineup and the actual trial in this case? It was several years. It was, let's see, 2,004 or 2,005 years. And he's definitely bald in trial. He's bald on his eye dot photo now. Is there anything else? There's nothing further, Your Honor. Thank you. This case was very well argued and very well briefed and will be taken under a test.